JOSEPH THOMAS, INC., and Marvin Mackey, Assignee of Joseph Thomas, Inc., Appellants,

v.

Terry GRAHAM, Sr., Appellee.

No. 12–90–00091–CV.

Court of Appeals of Texas, Tyler.

Oct. 30, 1992.

H.L. McGee, Tyler, for appellants.

Willis Jarrel, Sr., Tyler, for appellee.

Before RAMEY, C.J., and COLLEY and BILL BASS, JJ.

RAMEY, Chief Justice.

Marvin Mackey, dba Mackey–Harris Excavating and Paving Company ("Mackey"), appeals from a judgment following the trial court's instructed verdict in favor of the Defendant, Terry Graham, Sr. ("Graham"), after Mackey had rested his case. Mackey's suit arose out of a written agreement between Graham and Ferrier Construction Company ("Ferrier"), the general contractor on a project in Tyler known as Park East Business Center ("Park East"), which was owned by Joseph Thomas, Inc. ("Thomas"), the sole stockholder of which was one Joe˙ Mangione ("Mangione"), and Joyce Ferrier, individually. Mackey was an asphalt paving sub-contractor whose work on the project was duly accepted by the general contractor and owner, but for which he has not been paid. We will affirm.

The instrument made the basis of this suit is as follows:

July 9, 1979

Mr. Terry Graham

2101 East Fifth Street

Tyler, Texas 75701

Dear Mr. Graham:

This will confirm our agreement with you that in consideration of you guaranteeing our contract with Joseph Thomas, Inc., we will pay you a fee of SIX THOUSAND ($6,000.00) DOLLARS, the same being a guarantors fee and for you agreeing to protect the Citizens First National Bank of Tyler, Texas and Joseph Thomas, Inc., we guarantee that it will not cost you any money. If you are forced to pay any labor or material bills, we will reimburse you all the money you have been out together with any and all expenses plus 10% interest on money spent including attorney's fees.

Yours very truly,

FERRIER CONSTRUCTION CO., INC.

BY:s/ Mrs. Joyce Ferrier

President

s/ Mrs. Joyce Ferrier

Individually

ACCEPTED BY:

s/ Terry Graham

Terry Graham, Sr.

The parties to the underlying general construction contract for the Park East improvements were Thomas, the owner, and Ferrier, the general contractor. Ferrier then agreed with the various sub-contractors, including Mackey, to construct the project. After completion of the paving, Mackey filed suit for payment for his work against Ferrier and Mangione on November 17, 1980. In early 1981, Ferrier Construction Company filed for bankruptcy protection; the cause of action against that entity was abated. It is not disputed that in December 1981 or January 1982 Mackey had knowledge of the above-quoted letter agreement between Ferrier and Graham.

The corporate owner, Thomas, was joined as a defendant in the first suit in July 1984. Some two years later, on August 6, 1986, by agreement between Mackey, Mangione and Thomas, Mackey recovered judgment against Thomas in the first suit for $48,636.94, attorneys fees, interest and court costs, which judgment has not been satisfied.

Thomas then filed this suit against Graham on April 16, 1987, alleging that Graham was liable to it as indemnitor under the above agreement. On December 16, 1987, Thomas, joined by its president, Mangione, then assigned this cause of action against Graham to Mackey. Since that date, the suit has been prosecuted solely by Mackey, and Thomas has not participated further.

At the trial of this second suit and after Mackey had rested his case, the court granted Graham's oral motion for a directed verdict, and on January 16, 1990, entered its judgment thereon. No specific

grounds for the trial court's ruling were recited in the judgment. Among the grounds for instructed verdict orally argued by Graham after Mackey rested his case, in addition to Mackey's claim being barred by the limitations statute, were that Thomas' assignment of the claim to Mackey was ineffectual as being conditional only, and that Thomas had paid no monies to Mackey and had not urged his various legal defenses to Mackey's suit.

█ In reviewing a trial court's action in granting a directed verdict, the appellate court must view the evidence in the light most favorable to the non-movant, the party against whom the verdict was instructed, and disregard all evidence and inferences to the contrary. *Qantel Business Sys. v. Custom Controls*, 761 S.W.2d 302, 303–304 (Tex.1988). As acknowledged in Mackey's brief, since the trial court's judgment recited no specific grounds for her ruling in granting the motion for instructed verdict, Mackey must demonstrate that none of the grounds asserted by Graham in its oral motion entitle Graham to the directed verdict. *See Rudolph v. ABC Pest Control, Inc.*, 763 S.W.2d 930, 932 (Tex.App.—San Antonio 1989, writ denied). In this case, a directed verdict is proper when the evidence conclusively proves a fact that establishes Graham's right to judgment as a matter of law. *McCarley v. Hopkins*, 687 S.W.2d 510, 512 (Tex.App.—Houston [1st Dist.] 1985, no writ).

Mackey has assigned three points of error. By his first point, Mackey asserts that the Texas limitations statute had not run on his cause of action against Graham. The four-year statute of limitations applies. TEX.CIV.PRAC. & REM.CODE ANN. § 16.-004(a)(3) (Vernon 1992). Mackey's paving work having been performed in 1979, and this suit against Graham having been filed in 1987, the central inquiry is *when did Mackey's cause of action accrue:* at the time that Mackey's paving was completed and accepted but not paid by Thomas, or did it accrue in 1986 only after Mackey's judgment was rendered against Thomas.

█ It is significant whether the agreement sued on was a contract of indemnity or guaranty. If Mackey's cause of action herein is upon a contract of *indemnity*, the statute of limitations has not run on this suit against Graham. It did not accrue until a contested or agreed final judgment was rendered in favor of Mackey against the indemnitee, Thomas, on August 6, 1986. *Conroe Truck & Tractor, Inc. v. Childs Truck Equipment, Inc.*, 723 S.W.2d 207 (Tex.App.—Beaumont 1986, no writ); *Amoco Chemicals Corp. v. Malone Service Co.*, 712 S.W.2d 611 (Tex.App.—Houston [1st Dist.] 1986, no writ); *City of San Antonio v. Talerico*, 98 Tex. 151, 81 S.W. 518 (1904).[1]

█ If, however, Graham's obligation to Mackey arose out of an absolute contract of *guaranty*, Mackey's cause of action herein was barred; the cause of action against Graham under the guaranty agreement accrued in 1979 when Thomas did not pay Mackey for the paving work. *Shepherd v. Eric Schuster Corporation*, 424 S.W.2d 693 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *McGhee v. Wynnewood State Bank*, 297 S.W.2d 876 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.); *Austin v. Guaranty State Bank*, 300 S.W. 129 (Tex.Civ.App.—Waco 1927, no writ); *Ganado Land Co. v. Smith*, 290 S.W. 920 (Tex.Civ.App.—Galveston 1927, writ ref'd). A written guaranty that is unqualified and expresses no condition for the payment of the debt is an "absolute guaranty".[2] *Universal Metals & Machinery, Inc. v. Bohart*, 539 S.W.2d 874 (Tex. 1976). Graham's obligation under the terms of the letter agreement requires no pre-conditional activity for its enforcement against Graham.

---

1. For an analysis of Texas indemnity law on this issue, *see Koonce v. Quaker Safety Products & Manufacturing Company*, 798 F.2d 700 (5th Cir. 1986). *Also see* Wilson, CONTRIBUTION AND INDEMNITY: *When Does the Cause of Action "ACCRUE?"*, 51 TEXAS BAR JOURNAL 120–24 (1988).

2. Sometimes referred to as a "guaranty of payment"; it is to be distinguished from a "guaranty of collection" or "conditional guaranty".

A judgment against the principal obligor, Thomas, in this case, is not a condition precedent to the accrual of an absolute guaranty. An absolute guarantor is primarily liable and waives any requirement that the creditor take action against the principal obligor as a condition to his liability on the guaranty. *Hopkins v. First Nat'l Bank at Brownsville*, 551 S.W.2d 343, 345 (Tex.1977); *Ford v. Darwin*, 767 S.W.2d 851, 855 (Tex.App.—Dallas 1989, writ denied).[3] Traditionally, a guarantor is a favorite of the law and creditors' claims against them are strictly construed. *McKnight v. Virginia Mirror Company*, 463 S.W.2d 428, 430 (Tex.1971).

Furthermore, Mackey's attorney admittedly had knowledge of Graham's obligation to Thomas and any other unpaid sub-contractors as early as 1981 or January 1982, more than four years before the filing of this suit against Graham.

The agreement sued on embodies two divisible, distinct obligations, one by each contracting party: (1) Graham promised, for a fee, to guarantee Ferrier's general construction contract with the owner, Thomas, and "to protect" Thomas;[4] and (2) the other party, Ferrier, promised that the payments made by Graham under (1) would not cost Graham any money, but that if it did, Ferrier would reimburse Graham, including his expenses and interest. Thus, the first agreement required Graham to satisfy Thomas' unpaid obligations on the Park East project, whereas the other obligation required Ferrier to repay Graham for his expenditures on that project.

The latter obligation (2) was considered in a prior appeal to this court, *Joyce Ferrier v. Terry Graham*, No. 12–84–0198–CV, in which we held, in an unpublished opinion, that that second portion of the agreement requiring reimbursement of Graham by Ferrier for payments to another subcontractor was an indemnity contract.

This was a standard direct indemnity agreement between the two contracting parties, Ferrier and Mackey.

The first obligation, that of Graham to Thomas' creditors, is at issue here, however. Although the petition herein alleges that Mackey was asserting his claim under an indemnity agreement, the rights and duties of the parties is determined by the nature of the obligation. Likewise, it is noted that there are two distinct references in the first section of the agreement to a "guaranty" relationship. It is the nature of that relationship, not the language in the agreement, that controls. *Wood v. Canfield Paper Co.*, 117 Tex. 399, 5 S.W.2d 748, 750 (1928).

There are significant differences in the construction of a contract of guaranty and an indemnity contract. The latter is an original obligation between contracting parties and independent of other agreements; on the other hand, a guaranty contract is collateral and secondary to the principal contract that is guaranteed in the secondary contract. *Olson v. Smith*, 72 S.W.2d 650, 652 (Tex.Civ.App.—El Paso, writ dism'd); 38 C.J.S. *Guaranty* § 2, 4, 5 (1943). Here, Graham promised to protect the owner, Thomas, whose obligation to Mackey arose out of a separate and primary contract. Thomas was not a party to the agreement sued on. The instant case presents a classic collateral agreement of guaranty by Graham of the underlying general construction contract obligation of the owner, Thomas, to those who performed services on its behalf.

Mackey's cause of action against Graham, under his agreement to guarantee Thomas' obligations to his sub-contractors, accrued in 1979 when Thomas defaulted on its obligation to pay Mackey who had performed valuable services on behalf of the owner. The four-year statute of limita-

---

3. Even those cases, since overruled, that required joinder of the principal obligor in a creditor's suit against a guarantor under Tex.R.Civ.P. 31 and Tex.Civ.Prac. & Rem.Code Ann. § 17.001 (Vernon 1992), recognized that a judgment against that obligor was not a prerequisite to recovery against the guarantor. *See Cook v.*

*Citizens National Bank of Beaumont*, 538 S.W.2d 460, 464 (Tex.Civ.App.—Beaumont 1976, no writ); *Ferguson v. McCarroll*, 588 S.W.2d 895 (Tex.1979).

4. As well as the interim financing institution, Citizens First National Bank of Tyler, Texas.

tions on the guaranty contract, therefore, had barred the suit against Graham which was not filed until April 1987. Mackey's first point is overruled. We hold that Graham is entitled to his judgment on the court's directed verdict as a matter of law. We need not address Mackey's remaining points of error challenging other possible grounds for the instructed verdict.

The trial court's judgment is affirmed.